### HUGHES v. DUNGY.

1. Accounting—Modification of Decree—Down Payment.
   Evidence sustains modification of decree in suit for accounting between parties who had purchased a rooming house by deducting from portion of proceeds of sale awarded defendant the amount which plaintiff had contributed toward down payment in excess of her half thereof and adding such amount to award made to plaintiff but not to justify finding that a new agreement had been made between them at time of purchase as to respective percentages of interest in the premises which they were then buying as tenants in common.

2. Receivers—Compensation—Accounting—Evidence.
   Trial court's failure to award plaintiff compensation for services rendered by her as receiver in suit for accounting as to property in which she had a substantial interest is not disturbed, where court replaced her as receiver, there was no understanding she was to be compensated for such services, no

---

REFERENCES FOR POINTS IN HEADNOTES

[2] Generally as to compensation of receivers, see 45 Am Jur, Receivers § 281.
[3, 4] 3 Am Jur, Appeal and Error §§ 820, 959.

proof as to how many hours were required by her to fulfill her duties in such capacity and the circuit court commissioner reported she had failed to account for money collected.

3. APPEAL AND ERROR—PARTITION—COSTS—QUESTIONS REVIEWABLE —MODIFICATION OF DECREE—STATEMENT OF REASONS AND GROUNDS OF APPEAL.

Decree in accounting and partition suit which omitted to assess partition costs is not modified in such respect, where record does not show the submission of such question to the lower court and such claimed error was not included in the statement of reasons and grounds of appeal (CL 1948, § 631.65).

4. SAME—ATTORNEY FEES—RECEIVERS—PARTITION—DISCRETION OF COURT.

Failure of lower court in suit for accounting and partition to allow fees for plaintiff's attorney while she was receiver and in connection with partition proceedings is not disturbed on appeal in the absence of a showing in the record as to the extent or value of the services rendered, no clear abuse of discretion on the part of the lower court being shown.

5. SAME—ACCOUNTING—RECORD—CIRCUIT COURT COMMISSIONER.

Accounting of circuit court commissioner, as confirmed by the circuit court in suit for accounting and partition, is not disturbed under record submitted, there being nothing in the record warranting a determination by the Supreme Court that the commissioner's accounting was erroneous.

Appeal from Wayne; Ferguson (Frank B.), J. Submitted March 5, 1954. (Docket No. 55, Calendar No. 45,520.) Decided April 5, 1954. Rehearing denied June 7, 1954.

Bill by Leonia Hughes against Isaac L. Dungy for accounting, and for partition or division of proceeds of property held in common. Decree for plaintiff. Plaintiff appeals. Modified.

*Joseph A. Cassese,* for plaintiff.

*Lee & Fieger (Bernard J. Fieger,* of counsel), for defendant.

KELLY, J.  On September 5, 1946, plaintiff and defendant as vendees made a down payment of $5,019.-48 on a land contract for the purchase of a 3-story house on Medbury avenue, in the city of Detroit. This purchase was made with the intention of operating a rooming house and, after payment of operational expenses plus $85 monthly payments on the contract, dividing the balance remaining. Almost 1 year later, August 6, 1947, plaintiff filed her bill of complaint asking for an accounting, partition and division of the premises, and for the appointment of a temporary receiver.

After consideration of the circuit court commissioner's finding of fact and law, the trial court on March 28, 1951, decreed that there should be deducted, as moneys collected in behalf of the partnership and not accounted for, $216.64 from defendant's share and $2,419.61 from plaintiff's share; and that there should be deducted as money advanced on order of the court, $1,000 from defendant's share and $500 from plaintiff's share. After making these deductions the court decreed that the distributable amount of $9,644.46 should be divided between plaintiff and defendant. Plaintiff appeals.

Three periods of time were established both in the hearings and report of the circuit court commissioner; namely, September, 1946, to August, 1947, being the time between the date of purchase and the date plaintiff filed her bill of complaint; August 15, 1947, to October, 1948, during which time plaintiff acted as temporary receiver; and October, 1948, to October, 1949, being the period between the appointment of Arthur Bowman as receiver and the date of sale of the premises.

Appellant contends that the court failed to take into consideration the fact that plaintiff and defendant did not make equal initial contributions when

the land contract was executed. Defendant insists there was equal contribution.

Defendant made a very unsatisfactory showing both in regard to how much he paid on the day the contract was executed, and where he got the money he claimed to have paid. He testified that he and plaintiff each paid half of the $5,000 required as the initial payment on the contract. He admits that he knew plaintiff had to contact her friends and relatives for money, but claims this was because plaintiff did not have her half of the money. Defendant admitted he was not working at the time the contract was entered into, and it is impossible from the record to determine just when he was last employed.

On direct examination defendant was shown his bankbook showing a deposit of $1,000 on August 28, 1946, and he explains this deposit by saying: "I got that from a friend of mine outside of Detroit, at Nashville, Tennessee." This bankbook showed a withdrawal of $1,085 on September 4, 1946. On cross-examination he stated that he kept most of his money in his room rather than in the bank. He testified:

"I kept several hundred dollars in my room, and $90 in the bank. I keep several hundred dollars in my room because in my business, I have several lines of business—I have to get money on short notice. The several lines of business where I need money on short notice are, I was working with Stinson, he is a model builder, in other words makes models for invention. We needed money in that and I had all that expense. I never had a checking account for that purpose."

Defendant testified that the $2,500 he paid as his share consisted of money he had and money he borrowed from relatives and a friend. The relatives testified to $475 of loans, as follows: A cousin, $100; another cousin, $65; his sister, $310. The friend,

who was a bartender but who had worked with defendant for the Detroit Street Railway, testified that he had made two $500 loans to defendant, the first in August, 1946, and the second early in September; that he withdrew the first $500 from his bank account; that he obtained the second $500 by taking $200 belonging to his wife, which she had obtained from her uncle, and $300 from money he kept in his house or his pocket. He admitted he did not get a note or receipt for this $500; that 2 years had elapsed since he lent this money to defendant and "he still owes me $500."

Plaintiff testified:

"On September 5th, I had my share of the money but Dungy didn't. He didn't bring it in: I learned some time before noon on September 5th, that he did not have his share. The real-estate man demanded to close. He said if we didn't get the money I would lose my $500 and when Dungy showed up I told him what the real-estate man said. He said he had tried but he didn't have all the money. He said he had borrowed some. He couldn't borrow a dime from anybody. He said he had $1,770. I had my share then. When he didn't have enough I told him I was going to lose my $500 because it was my money. He said if I did lose he would pay me back. He was just saying that. I said I didn't want to lose it and we decided if I got the money I would have a bigger share in it and I got out and raised—borrowed the money. I had an extra $100 in the house and I borrowed $100 from Mrs. Roar. She isn't here, she is sick. I got $300 from her husband. He is here. I borrowed $200 from Miss Connor. She is here. I borrowed $200 from Conway. I went to Mrs. Conway and told her I wanted to take some money and she asked me how much did I want and I told her $200. She said she had to go to the post office and get it and I told her Mr. Dungy would meet her and pick it up. That was on September 5th and

I sent Dungy over to pick the money up. That is all I borrowed, that is all I needed. I borrowed enough to make up the amount Dungy was short. * * * Since that time Mr. Dungy has not given me one penny to make up the difference between this $1,770 and $2,562 that he should have paid. * * * I borrowed $700 from friends and relatives, the same day the deal was closed, September 5th. These people had been repaid from my money I got from my sister Carrie, when she came back to the city around September; I don't remember the exact date. It was about a week after I borrowed the money from these people."

Morgan Dunbar, a millwright at Ford Motor for 11 years, who had known plaintiff and defendant before they bought this property, corroborated plaintiff's testimony:

"I was present on September 5, 1946, when they closed the deal. There was a discussion about money. It was about 2 or 3 o'clock in the afternoon. Mr. Dungy said he couldn't raise enough money, that is his 50/50 share. He had been out and he returned and said he couldn't raise any more money. Miss Hughes said she had to get it, she wasn't going to lose her deposit. He said he couldn't raise another cent, so Miss Hughes said she would try to raise it and went out. She came back about 6 p.m. and Dungy was there. She had the money. I drove them out to the real-estate office in my car. I was not in the office when the deal was closed but stayed in the car."

Plaintiff's sister, after stating that she was employed during the summer of 1946 as a domestic in a private home at Port Austin, testified:

"Before I went away I knew my sister, Leonia, was thinking about buying some property and I let her have some money before I left. It was $500, which I was keeping for her. I had kept it in the

postal savings at the post office. I also had $1,104 of my own money in that account. I had a bank account at the Detroit Bank on Clay. In July, 1946, I had around $400 or $500 in that account. * * * When I came back to Detroit after Labor Day the contract had already been closed. I knew from an earlier telephone conversation with Leonia that she was going through with the deal and when I came back to Detroit I took $800 out of my savings and gave it to Leonia so she could pay back money she had borrowed. She asked me to get the money. The long-distance phone call she had with me was about this money. I told her to borrow it and when I got home I would pay it back and I did. I think I got back to Detroit on the 9th of September. It was right after Labor Day, I am not sure."

Wilson B. Roar testified that some time about September 5, 1946, he lent the plaintiff $300 and that the money was paid back 2 weeks later when plaintiff's sister returned to Detroit. Nora Conway testified that she knew the plaintiff in September, 1946, and that she "loaned her $200 in September, 1946." She stated: "I got it back about 2 weeks after that. She wanted the money to buy this house."

The plaintiff was at the time of the purchase, and had been for 5 years prior thereto, employed on engine assembly work. The defendant was not employed. The defendant first discovered the premises, but it was the plaintiff who was called upon to make the initial $500 payment. It is impossible to follow defendant's testimony in regard to his financial status at the time of purchase; it was vague and contained many contradictions and inaccuracies. We believe the testimony sustains plaintiff's statement that, "Since that time (the day the contract was signed) Mr. Dungy has not given me one penny to make up the difference between this $1,770 and $2,-562 that he should have paid;" and that therefore the decree should be modified by deducting $792

from the amount awarded to the defendant and adding $792 to the amount awarded to the plaintiff.

Plaintiff's payment of $792 more than defendant paid does not constitute sufficient proof that it constituted a new agreement changing the original agreement to purchase as tenants in common with equal interests, but rather as a payment made .by plaintiff to effectuate the purchase and safeguard the $500 down payment plaintiff had made. Appellant's request that the division be made on a 65% and 35% basis is denied and, after modifying the decree so as to give an additional credit of $792 to appellant, the division of money on hand will be made as provided by the present decree of the circuit court.

Appellant contends the court erred in failing to provide compensation for services rendered by her as receiver between August 15, 1947, and October, 1948. The court replaced plaintiff as receiver, and the commissioner reported that the plaintiff had failed to account for money collected. There was no understanding that plaintiff was to be compensated at the time she accepted her responsibility as an officer of the court to manage and conserve property in which she had a substantial interest. The record does not include proof as to how many hours were required by plaintiff to fulfill her duties as such receiver. This Court will not, under these circumstances, pass judgment on the lower court's decision as to how much, if any, compensation should be paid. plaintiff as receiver.

In regard to appellant's contention that the court erred in not assessing partition costs under the provisions of PA 1915, No 314, ch 31, § 65 (CL 1948, § 631.65 [Stat Ann § 27.2076]), it is sufficient to say that the record does not disclose the submission of this question in the lower court, and an examination of the statement of reasons and grounds of appeal

proves that this claimed error was not included .
therein.

Appellant claims error because the court failed to provide compensation for plaintiff's attorney in the partition proceedings and also as attorney for the plaintiff as receiver. The record fails to disclose the extent or value of the services rendered. A question like this must be left to the sound discretion of the court and unless there is a clear abuse of said discretion this Court will sustain the decision of the lower court. *Greusel* v. *Smith,* 85 Mich 574. No such showing has been made by the appellant.

Appellant asks the question:

"Was the circuit court in error in confirming the circuit court commissioner's court on accounting, et cetera, whereby plaintiff was surcharged $2,419.61 over and above her accounting figures and the defendant was surcharged merely with $216.64?"

We agree with appellant's statement in her brief that it is difficult to analyze the accounting from the record submitted. An examination of the record does not disclose testimony which would warrant a determination by this Court that the circuit court commissioner's accounting was erroneous or that the decree of the circuit court in this regard should be reversed.

The decree herein should be modified by deducting $792 from the amount awarded to the defendant and adding $792 to the amount awarded to the plaintiff. Costs to appellant.

Butzel, C. J., and Carr, Bushnell, Sharpe, Boyles, Reid, and Dethmers, JJ., concurred.